IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA      :
                              :      CRIMINAL ACTION
        v.                    :
                              :      No. 1:14-cr-00290-TWT-JKL
OSCAR JAMESON STOKES          :
                              :
                              :

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by Byung J. Pak, United States Attorney for the Northern District of Georgia, and C. Brock Brockington, Assistant United States Attorney, and hereby files this Sentencing Memorandum.  In support of its position, the Government states the following:

## PROCEDURAL HISTORY

On August 6, 2014, a federal grand jury sitting in the Northern District of Georgia returned an Indictment charging the Defendant, Oscar Jameson Stokes, with drug conspiracy and other offenses relating to the operation of a pain clinic in the Atlanta metropolitan area. (Doc. 1).  On July 7, 2015, that federal grand jury returned a superseding indictment that added charges, and also named Defendant's wife, TaShawna Denise Stokes, also a physician employed at the pain clinic.  (Doc. 55).  Specifically, Count One charged the defendants with conspiracy to distribute

and dispense various controlled substances, including Oxycodone, a Schedule II controlled substance, outside the usual course of professional practice and for no legitimate medical purpose, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C) and (b)(2). (Id.).  Counts Two through Twenty-one charged (1) maintaining a place for drug distribution, (2) individual counts of illegally distributing controlled substances, and (3) money laundering. (Id.).

On July 31, 2019, the day before jury selection was scheduled to begin, Defendant pleaded guilty to Count One of the Superseding Indictment.  (Doc. 264). Following the initial presentence report, Defendant objected to each of the Guidelines calculations: the base offense level, enhancements for maintaining a premises, pattern of criminal conduct, role in the offense, abuse of trust, and safety valve.  (PSR ¶¶ 111-13, 115-16, 121).  Defendant's sentencing hearing is scheduled for Wednesday, January 29, 2020.  This memorandum sets forth the legal authority at issue in several of the Guidelines objections.

## Defendant's PSR Objections

### § 3B1.3. Abuse of Position of Trust or Use of Special Skill

With respect to the enhancement pursuant to U.S. Sentencing Guideline § 3B1.3, the Government will comply with provision of the plea agreement wherein it agreed to recommend that Defendant receive a two-level upward

adjustment for use of a special skill in a manner that significantly facilitated the commission of the offense.  (Doc. 264, Att. 2 at 5).  Accordingly, while it does not necessarily disagree with the findings in the Pre-Sentence Investigation Report ("PSR"), the Government will maintain the position it sought in the plea agreement concerning Section 3B1.3.

If the Court applies the Section 3B1.3 enhancement as a special skill, rather than as an Abuse of Trust, the Guidelines calculation in the PSR must necessarily change.  Section 3B1.3 explicitly holds that if the adjustment is "based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)."  U.S. Sentencing Guidelines § 3B1.3.  Should the court base the enhancement on Defendant's use of a special skill – rather than on an abuse of trust, as recommend by the PSR – then the Government would agree with Defendant that the Sentencing Guidelines would not support a further enhancement based on aggravating role.  (PSR ¶115).

And since the enhancement for committing the offense as part of a pattern of criminal conduct is only triggered when an aggravating role is applied, it follows that should the Court base the Section 3B1.3 enhancement on special skill, the Sentencing Guidelines would not support the additional enhancement under Section 2D1.1(b)(16)(E) either.  U.S. Sentencing Guidelines § 2D1.1(b)(16)

(conditioning enhancement on whether "defendant receives an adjustment under § 3B1.1 (Aggravating Role)").  But if the Court applies the Section 3B1.3 enhancement on Defendant's abuse of trust, then the Government has no objection to the Guidelines calculations as presented in the PSR.

### § 2D1.1(b)(12) Maintaining a Premises

This Court should overrule Defendant's objection to the two-level enhancement for maintaining a premises for the purposes of drug distribution. (PSR ¶ 112).  Section 2D1.1(b)(12) advises a sentencing court to increase the base offense level by two levels "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance."  U.S. Sentencing Guidelines § 2D1.1(b)(12).  The application notes contain a non-exhaustive list of factors that the Court should consider when determining whether the defendant maintained the premises: "(A) whether the defendant held a possessory interest in (e.g. owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at the premises."  Id. at cmt. n.17. The commentary also notes that manufacturing or distribution need not be the sole purpose for which the premise was maintained but should be more than an incidental or collateral use for the property.  Id.

4

Here, Defendant essentially concedes that he maintained Innovative Pain Management Center – that is not up for debate.  (PSR ¶ 112).  Rather, Defendant contends that the enhancement was "intended to apply to defendants who use premises as secret stash houses to conceal their drug activities from law enforcement, not to doctors who own or operate medical clinics."  Id.  This argument must fail.  This Court has applied the same enhancement in the clinic setting, and the application has been blessed by the Eleventh Circuit.  In United States v. Roland, where the defendant physician (who had been assessed an enhancement for use of a "special skill) also did not dispute that he owned the pain clinic where he prescribed controlled substances, the Circuit court reasoned that "whether the district court erred in applying the increase turns on whether [defendant] used his clinic primarily for the purpose of distributing controlled substances without a legitimate medical purpose."  737 Fed. Appx. 484, 506 (11th Cir. 2018).  The Roland court concluded that the district court did not err when it applied this enhancement; notably, it did not reverse on the basis that the enhancement was meant to apply only to crack houses, as Defendant here contends, nor did it reject the enhancement because of double counting.  Id. at 507; see also United States v. Cannata, 17-15539, 2019 WL 5801706, at *6 (11th Cir. Nov. 7, 2019) (concluding that application of maintaining premises enhancement

for pain clinic "was not error, much less clear error").  Accordingly, Defendant's operation of an ostensible pain clinic to illegally prescribe oxycodone triggers the two-level enhancement set forth in Section 2D1.1(b)(12).

## **CONCLUSION**

Defendant's illegal prescribing activity at the clinic he owned and operated properly triggers the application of the enhancement for maintaining a premises.

Respectfully submitted,

BYUNG J. PAK
UNITED STATES ATTORNEY

*/s/ Brock Brockington*
C. BROCK BROCKINGTON
ASSISTANT U.S. ATTORNEY

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, Georgia 30303
(404)581-6000 (Office)
(404)581-6181 (Fax)
Georgia Bar No. 775084

6

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following attorney(s) of record:

> Page Pate
> Jess Johnson
> Pate, Johnson & Church
> Centennial Tower - Suite 3300
> 101 Marietta Street NW
> Atlanta, Georgia 30303

This 29th day of January, 2020.

> */s/ Brock Brockington*
> C. BROCK BROCKINGTON
> ASSISTANT U.S. ATTORNEY

7